UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

MARTIN MOBARAK PRADO and
COMPROSUORO S.A. de C.V.,

                Plaintiffs,

  -v-                                                                       No. 22-CV-7582-LTS

JPMORGAN CHASE & CO.,

                Defendant.

-----------------------------------------------------------X

<u>MEMORANDUM ORDER</u>

        Plaintiffs Martin Mobarak Prado ("Mr. Mobarak") and Comprosuoro S.A. de C.V. ("Comprosuoro" and, together "Plaintiffs") bring this action for alleged violations of the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. section 1961 <u>et seq.</u>, and the Sherman Act, 15 U.S.C. section 2, against JPMorgan Chase & Co. ("JPMorgan" or "Defendant"). The Court has jurisdiction of this action pursuant to 18 U.S.C. section 1964 and 28 U.S.C. section 1331.

        The case is before the Court on JPMorgan's Motion to Dismiss the First Amended Complaint. (Docket entry no. 28 (the "Motion to Dismiss").) The Court has carefully considered the submissions of the parties in connection with the instant motion. For the following reasons, the Motion to Dismiss is granted.

BACKGROUND

        The following summary is drawn from the First Amended Complaint (docket entry no. 25 (the "First Amended Complaint" or "FAC")), the well-pleaded factual allegations of which are taken as true for the purposes of this motion practice.

Mr. Mobarak is the CEO and owner of Comprosuoro, a mining corporation that has owned the Dorosa silver mine since 1999. (FAC ¶¶ 2, 13.) The Dorosa silver mine is located in the Sultepec mining district of Mexico. Id. After the mine had been dormant for several years, Plaintiffs made capital improvements to the mine and restarted mining operations in 2012. (Id. ¶¶ 14-16.) This decision was made because, "against [the] market backdrop" of high silver prices in 2010, 2011, and 2012, "Comprosuoro determined that it would be viable and profitable to restart mining operations and increase silver production at the Dorosa mine." (Id. ¶ 14.) However, in late 2014, "Comprosuoro was forced to shut down production at the Dorosa silver mine and suspended all mining development and operations" due to substantial drops in the price of silver in 2013 and 2014. (Id. ¶¶ 17-18.)

Plaintiffs allege that this precipitous drop in the market price of silver was the result of "illegal manipulation of the silver price" by JPMorgan. (FAC ¶ 17; see also id. ¶¶ 29-46.) Specifically, Plaintiffs allege that JPMorgan manipulated the silver market over the course of "tens of thousands of trading sequences," by engaging in "spoofing"—i.e., placing "a combination of genuine and deceptive orders for silver and silver derivatives." (Id. ¶¶ 30-31.) Typically, a spoofing transaction proceeds as follows: (1) a trader "place[s] one or more orders . . . that they intend[] to execute" (the "Genuine Order"); (2) the trader "place[s] one or more orders on the opposite side of the market from the Genuine Order[]" (the "Deceptive Order)"; (3) the trader's Genuine Order is filled in whole or in part; and (4) the trader quickly cancels the Deceptive Order. (Id. ¶¶ 31-32.) "JPMorgan was able to artificially suppress the price of silver" by spoofing. (Id. ¶ 45.)

While the Dorosa silver mine was operational, and when Comprosuoro decided to shut down operations, "Plaintiffs remained completely ignorant to the fact that a significant drop

in global silver prices in 2013 and 2014 was the direct result of such unlawful manipulation of the silver commodity market by JPMorgan." (FAC ¶ 65). Indeed, Plaintiffs only learned about JPMorgan's price manipulations when JPMorgan was "charged . . . with two counts of wire fraud in relation to [its] deceptive precious metals trading strategies" and entered into a Deferred Prosecution Agreement ("DPA") on September 29, 2020. (Id. ¶¶ 47–48, 61–65; see also docket entry no. 25-1 (the "DPA")). Pursuant to the DPA[1], JPMorgan admitted to a complex and unlawful scheme of silver price manipulation through "spoofing." (FAC ¶¶ 3, 29, 38, 47-49.)

After JPMorgan entered into the DPA, Plaintiffs initiated this lawsuit on September 6, 2022. (See docket entry no. 1.)

DISCUSSION

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A proper complaint cannot simply recite legal conclusions or bare elements of a cause of action; there must be factual content pleaded that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court accepts as true the nonconclusory factual allegations in the First Amended Complaint and draws

---

[1] In determining a Rule 12(b)(6) motion to dismiss, the Court may consider "the complaint, any exhibit attached to the complaint, materials incorporated in the complaint by reference, and documents that, 'although not incorporated by reference, are "integral" to the complaint.'" Jasper & Black, LLC v. Carolina Pad Co., No. 10-CV-3562-LTS-HBP, 2012 WL 413869, at *4 (S.D.N.Y. Feb. 9, 2012) (quoting Schwartzbaum v. Emigrant Mortg. Co., No. 09-CV-3848-SCR, 2010 WL 2484116, at *3 (S.D.N.Y. June 16, 2010)).

all reasonable inferences in the nonmoving party's favor.  Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007).

"Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint."  Ellul v. Congregation of Christian Bros., 774 F.3d 791, 798 n.12 (2d Cir. 2014); see also Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss.").

The statute of limitations for both Plaintiffs' RICO and Sherman Act claims is four years.  See In re Merrill Lynch Ltd. P'ship Litig., 154 F.3d 56, 58 (2d Cir. 1998) (RICO); see also Zenith Radio Corp. v. Hazeltine Rsch., Inc., 401 U.S. 321, 338 (1971) (Sherman Act).  For both claims, the statute of limitations begins to run upon a "plaintiff's discovery of the injury, not discovery of the underlying pattern of predicate acts."  Nat'l Grp. for Comm'ns & Computs. Ltd. v. Lucent Techs. Inc., 420 F. Supp. 2d 253, 264 (S.D.N.Y. 2006) (citing Rotella v. Wood, 528 U.S. 549, 555–57 (2000)).  Because Plaintiffs' alleged injury—that "Comprosuoro was forced to shut down production at the Dorosa silver mine and suspended all mining development and operations because the market price of silver at the time was less than the cost to produce the silver at the mine" in "late 2014" (FAC ¶ 18)—occurred more than four years before Plaintiffs initiated this action in 2022, their claims are time barred.

Plaintiffs argue that, because JPMorgan's "fraudulent concealment prevented Plaintiffs from discovering the true cause of the decline in silver prices, the limitations period on Plaintiffs' claims should be tolled until September 2020, the date of the DPA."  (Docket entry

no. 33 ("Pl. Mem.") at 3.)  "[A] statute of limitations may be tolled due to the defendant's fraudulent concealment."  Koch v. Christie's Int'l PLC, 699 F.3d 141, 157 (2d Cir. 2012) (internal quotation marks and citation omitted).  To establish fraudulent concealment at the pleading stage, Plaintiffs must allege three elements: "(1) that the defendant concealed from him the existence of his cause of actions; and (2) that he remained in ignorance of the violation during the limitations period; and (3) that the plaintiff's continuing ignorance as to the claim was not a result of a lack of due diligence."  In re Merrill, Bofa, & Morgan Stanley Spoofing Litig. ("Merrill Spoofing"), 2021 WL 827190, at *9 (S.D.N.Y. Mar. 4, 2021), aff'd sub nom. Gamma Traders - I LLC v. Merrill Lynch Commodities, Inc., 41 F.4th 71 (2d Cir. 2022).  Plaintiffs must plead each element "with the particularity required by Federal Rule of Civil Procedure 9(b)."  Id. Here, Plaintiff has failed to allege the first element.

Plaintiffs assert that, "[b]ecause [they] have adequately alleged the existence of a price-fixing scheme, the inquiry into the first fraudulent concealment prong is complete."  (Pl. Mem. at 5.)  In so doing, Plaintiffs rely on a number of cases in this Circuit that have concluded that price-fixing schemes are "inherently self-concealing."  See, e.g., State of N.Y. v. Hendrickson Bros., Inc., 840 F.2d 1065, 1083 (2d Cir. 1988); In re Nine W. Shoes Antitrust Litig., 80 F. Supp. 2d 181, 193 (S.D.N.Y. 2000) ("[B]y alleging a price-fixing scheme, the plaintiff sufficiently has alleged the first prong of fraudulent concealment and . . . there is no need to require the pleading of affirmative actions taken by the defendants to prevent the plaintiff's discovery of its claim.").  However, Plaintiffs' argument ignores that spoofing—the specific form of price manipulation that JPMorgan allegedly practiced—is readily distinguishable from the kinds of price-fixing that courts consider to be inherently self-concealing.  As the Merrill Spoofing court explained, "[t]he doctrine [of fraudulent concealment]

has been applied in cases of fraud where, based on the method by which the fraud was committed, <u>the plaintiff would be oblivious to the fact that he was harmed at all</u> . . . ." 2021 WL 827190, at *10 (emphasis added).  In other words, the first prong is met where "the plaintiff is unaware of the <u>injury</u>" and therefore had "no cause to investigate it."  <u>Id.</u> (emphasis added).  Here, in contrast, Plaintiffs clearly knew that they were harmed in 2014 when the Comprosuoro was forced to shut down production at the Dorosa silver mine.  Therefore, Plaintiffs have not alleged inherently self-concealing fraud—let alone affirmative actions taken by the Defendant to prevent Plaintiffs' discovery of their claim as required to satisfy the doctrine's first prong.

Because Plaintiffs' reliance on the fraudulent concealment doctrine fails at the first element, both of its claims are time barred.  For that reason, both claims are dismissed.[2]

## Conclusion

For the foregoing reasons, the Motion to Dismiss the First Amended Complaint is granted.  This Memorandum Order resolves docket entry no. 28.  The Clerk of Court is respectfully directed to enter judgment dismissing the First Amended Complaint and close the case.

SO ORDERED.

Dated: New York, New York
      September 19, 2023

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

---

[2] Because this issue is dispositive and Plaintiffs have proffered no facts or argument suggesting that they would be able plead a timely cause of action, the Court need not address the other arguments Defendant presented in its Motion to Dismiss.